In the Matter of IRVING D. FRIEDMAN et al., Petitioners.
NEW YORK, LACKAWANNA & WESTERN RAILWAY COMPANY, Respondent.

Supreme Court, Special Term, New York County, March 16, 1945.

*Harry H. Oshrin* for petitioners.

*Archie O. Dawson* and *Douglas Swift* for respondent.

MILLER, J. Proceeding for appraisal and payment of stock under section 161 of the Railroad Law. The petitioners, claiming to be objecting stockholders of the respondent, a domestic railroad corporation, move for the appointment of appraisers to value their stock, following its merger into another railroad corporation under sections 140 and 141 of the Railroad Law.

It is undisputed that the petitioners' shares of stock, except for 100 of 110 shares owned by petitioner Friedman, were registered in the names of other persons on the respondent's books. In their written objections to the merger and demands for payment for their stock, the petitioners adequately identified their respective stock certificates by stating the serial numbers,

the registrants' names and the number of shares represented by them. The petitioners, also, openly claimed that they owned such stock and that the several registrants were simply nominees who had no interest in the stock.

The respondent admits that none of the registrants voted for the merger or made any objection to it or made any demand for payment for the stock registered in their names.

The respondent challenges the petitioners' right to maintain this proceeding in respect of stock not registered in their names, on the ground that they are not stockholders who are entitled to the relief provided by section 161 of the Railroad Law. It further contends that petitioner Friedman is barred from obtaining such relief on the additional ground that his written objection and demand for payment erroneously referred to 110 shares, when only 100 were registered in his name.

Section 161 of the Railroad Law, so far as now relevant, reads as follows: " * * * if any stockholder of any corporation of this state to be merged into another corporation not voting in favor of a merger * * * shall, at the stockholders' meeting at which such * * * merger * * * is approved or within twenty days thereafter, object to such * * * merger * * * and demand payment for his stock, such stockholder * * * may, provided such * * * merger * * * shall * * * become effective, have such stock appraised * * * ."

Under this statute, there is no requirement that the objecting stockholder shall, at any time, be registered as such on the corporate books. The respondent, nevertheless, contends that the word "stockholder" should be construed to mean "registered stockholder".

The meaning of the word "stockholder", which is used in the statute, is well settled. A stockholder is one who owns a share of corporate stock. It "is the right which the shareholder has to participate according to the number of shares in the surplus profits of the corporation on a division, and in the assets or capital stock remaining after payment of its debts on its dissolution or the termination of its active existence and operation." (*U. S. Radiator Co.* v. *State of New York*, 208 N. Y. 144, 149.)

It is equally well settled that a certificate of stock is not the stock itself. Issuance of a stock certificate is not necessary in order to create the stockholder relation. A stock certificate, if issued, is simply evidence of the holder's ownership of the

stock. It is a mere document of title to the shares specified in it; "but it is not the stock itself, nor is it necessary to the existence of the stock. It certifies to a fact which exists independently of itself." (*Pacific National Bank* v. *Eaton*, 141 U. S. 227, 234.)

The respondent's arguments based upon the familiar provisions relating to stock registration cannot support its position in this proceeding. At common law, registration of transfer of a stock certificate was not required. At present, registration may be required only by virtue of a provision contained in a statute, the certificate of incorporation, or the by-laws. Failure of a transferee to take advantage of such a registration provision merely permits the corporation for certain limited purposes, e.g., voting, paying dividends and in giving notices and reports, to treat the registered stockholder as if he were the owner. But such registration does not forfeit the actual holder's ownership of the stock. Thus, even an unregistered owner of stock may bring a derivative stockholder's action. (*Baum* v. *Sporborg*, 146 App. Div. 537.) In a proper case, the court may determine the actual owner of stock, as corporate records are not necessarily conclusive. (*Campbell* v. *A. Z. Co.,* 122 N. Y. 455; *Matter of Ringler & Co.*, 204 N. Y. 30.)

Furthermore, a stock certificate may be transferred by one holder to another, without registering the transfer on the corporate books, even though the certificate of incorporation or by-laws of the corporation and the certificate itself provide that the shares represented thereby shall be transferable only on the books of the corporation or shall be registered by a registrar or transferred by a transfer agent. (Personal Property Law, § 162.)

These legal rules conform to the views and practices of the financial world. Any other rule would shake its very foundations, for, as has been pointed out (2 Cook on Corporations [8th ed.], § 444), hundreds of millions of dollars are loaned with no other security than certificates of stock indorsed in blank and delivered with no registry whatsoever on the corporate books. (Cf. *Pacific National Bank* v. *Eaton, supra.*)

Cases dealing with the right of stockholders to inspect corporate records under section 10 of the Stock Corporation Law have no relevancy in interpreting this appraisal statute. There is no resemblance between the two statutes, for the inspection statute expressly requires that the demanding stockholder " shall have been a stockholder of record * * * for at least six months immediately preceding his demand ".

Apart from the fact that this statute does not employ the words " registered stockholder ", further analysis of its provisions shows that a stockholder need not be the registrant of the stock in order to claim its benefits.

While a registered stockholder only is entitled to vote, a stockholder seeking appraisal and payment is not even required to vote against the merger. In fact, one of the express conditions of the statute is that the stockholder shall not have voted for it. Therefore, stockholders are not required to vote in order to have standing as dissenters. Hence, it would serve no useful purpose to require registration of the stock, with its accompanying right to vote, when the right itself need not, under the statute, be exercised. Had the Legislature intended to require a dissenting stockholder to be a holder of record, it would have been simple to have done so.

In this connection, it should also be noted that the right granted under the statute is an inchoate legal right. It cannot become a legal right until after the merger has been approved by the holders of two thirds of all the outstanding stock. This is evident from the provision that objection of a nonassenting stockholder can be made only after the merger is approved. Such objection need not be made at the stockholders' meeting at which the merger is approved, but may be made within twenty days thereafter.

No commercial expediency or supposed hardship on the respondent can be envisioned as justification for translating the word " stockholder ", as used in the statute, into the words " registered stockholder ".

It is urged by the respondent that to require registration, with its accompanying right to vote, would aid other stockholders in determining whether to approve or oppose the merger. This contention is fallacious. Stockholders favoring a merger can only effectuate it by obtaining the support of the necessary minimum two-thirds vote. On the other hand, nonassenting registered stockholders, if voting, must not vote for the merger. And, as already pointed out, a dissenting registered stockholder is not required to vote. And since, under the statute, he may postpone service of his objection until twenty days after the merger is approved, it is evident that neither the directors nor other stockholders are entitled to be informed of a dissenting stockholder's position before or when the merger is voted upon.

Moreover, dissenting stockholders, whether viewed separately or collectively, are minority stockholders. Whatever fiduciary duty to minority stockholders may rest upon majority stock-

holders when acting in unison, each dissenting registered stockholder, even if voting against the merger, " represents himself and his own interest solely, and he in no sense acts as trustee or representative of others " (*Gamble* v. *Q. C. W. Co. et al.,* 123 N. Y. 91, 97). Nor is he under any fiduciary duty to exercise his right to vote.

The statute fully safeguards the interests of the respondent against any appraisal proceeding that may be initiated by a registered stockholder who is not the actual owner of stock. Proof that he is not the actual owner of the stock would be proof that he is not the real party in interest and necessarily result in a dismissal of his petition. (*Matter of Rogers,* 102 App. Div. 466.) In no event, could such a claimant ever receive payment for stock registered in his name after his transfer of the certificates to another, for the statute expressly makes the surrender of the stock a condition precedent to payment.

In addition the statute empowers the court, on appointing appraisers, or at any subsequent time during the pendency of the proceeding, to direct a petitioner to submit his stock certificate to its clerk for notation thereon of the pendency of the appraisal proceeding under penalty of the dismissal of the proceeding on a failure to comply with the direction. Exercise of this power will effectively settle the question of the actual ownership of a petitioner's stock. (*Matter of Kinney,* 257 App. Div. 343.)

The aim of the appraisal statute is crystal clear. The respondent was organized primarily for pecuniary profit. A purchase of its stock was simply an investment in its business The object of the statute is to prevent the forcing of a dissenting stockholder, through the medium of a merger, to transpose his investment in one corporation into another. It achieves this objective by providing procedure for the valuation and payment of the dissenter's stock. Nothing should be read into the statute that would limit or frustrate this salutary purpose. In *Matter of Timmis* (200 N. Y. 177, 183) the court, in referring to the right to an appraisal under the Stock Corporation Law, held: " As the appellant [i.e., the corporation] availed itself of the privilege conferred by the statute, it must comply with the condition prescribed for the exercise thereof ".

The term " stockholder ", as used in the statute, plainly means that the actual owner of the stock alone is entitled to rights thereunder, even though his shares stand in the name of another on the corporate books. (*Matter of Kinney, supra; Mat-*

*ter of Rogers, supra; Matter of Rowe,* 107 Misc. 549; *Matter of Standard Coated Products Corp.* [*Bazar*], 183 Misc. 736.) Any other construction would impose a hardship on an owner and would be unreasonable.

In *Matter of Rogers* (*supra,* p. 467), in dealing with this question under a similar appraisal statute, the Appellate Division, Second Department, said: " We agree with the referee that section 36 of the Banking Law refers to the actual ownership of stock and not to shares standing in the name of one but really the property of another.''

In *Matter of Kinney* (*supra*), where the respondent also challenged the right of unregistered stockholders to an appraisal under section 21 of the Stock Corporation Law, the Appellate Division of this department held that there is no occasion for trying out the issues as to which stockholders are properly before the court or otherwise entitled to participate in the proceeding, if the petitioners are required to submit their stock certificates to the clerk of the court for notation thereon of the pendency of the appraisal proceeding. The practice thus sanctioned will be adopted in this proceeding.

In view of the foregoing construction of section 161 of the Railroad Law it follows that the respondent's objection to the demand of the petitioner Friedman for appraisal and payment of registered and unregistered shares of stock must be overruled. Even if registration of the stock were held to be a condition precedent to the right of appraisal and payment, the inclusion in his written objection to the merger of a demand for payment for unregistered shares of stock would not invalidate his right to an appraisal of the registered shares. The inclusion of the unregistered shares, if unwarranted, would be disregarded as a mere irregularity that could not mislead nor injure the respondent, since it is chargeable with knowledge of the exact number of shares registered in that petitioner's name on its own books.

Accordingly, the motion to appoint appraisers is granted, without prejudice to the right of any of the parties to this proceeding to move to consolidate it with any other proceeding or proceedings for the appraisal of stock in the respondent corporation under section 161 of the Railroad Law.

Settle on two days' notice order appointing appraisers, which shall contain a provision requiring the petitioners, within fifteen days after entry of the order, to submit their stock certificates to the clerk of this court for the notation thereon of the pendency of this appraisal proceeding.