Francis R. Moran, J.
The plaintiff brought an action against the defendants to recover damages in the amount of $31,253 with interest from January 14,1963. The complaint .states one cause of action for breach of contract in connection with the transfer of certain shares of stock that eventually became worthless.
The defendant, Lincoln Rochester Trust Company, was sued in its corporate capacity and in its representative capacity as executor of the estate of William C. Chapin. The defendants denied generally the allegations of the complaint and raised the following affirmative defenses:
1. The facts stated failed to constitute a cause of action.
2. Laches.
3. A restrictive clause on the face of the stock certificates was invalid.
4. The transfer did not violate the Securities Act of 1933.
The trial by a jury commenced on January 10, 1968. Both sides completed their proof on January 11,1968. The defendants moved for a directed verdict and the plaintiff moved for judgment in his favor. Since no issues of fact remained, the jury was discharged and the court reserved decision. Proposed findings of fact and conclusions of law were then timely submitted by the attorneys.
The defendant, Lincoln Rochester Trust Company, was appointed executor of the estate of William C. Chapin on June 20, 1962, and continued in that capacity insofar as the transfer *83 of the shares of .stock to the plaintiff, was concerned. Part of the estate consisted of 31,253 shares of the common stock of Towers Mart International, Inc., hereinafter referred to as T.M.I. After negotiations between the bank and the plaintiff, these shares were transferred to the First Trust & Deposit Company of Syracuse, New York, for delivery to the plaintiff. The following documents accompanied the share certificates — two stock powers, a certificate of letters testamentary, New York State inheritance tax waiver, affidavit of residency and a trust resolution.
On January 10, 1963, the plaintiff received the 31,253 shares of stock, together with the afore-mentioned accompanying papers. The plaintiff, in turn, delivered a bank draft to the First Trust & Deposit Company in the amount of $31,253, which amount was to be forwarded to the Rochester Bank. This transaction took place at the First Trust & Deposit Company in Syracuse, New York.
The following clause appeared on the face of the two share certificates representing 31,253 shares: ‘1 The shares represented by this Certificate have not been registered under the Securities Act of 1933 and may not be transferred without an opinion of counsel satisfactory to the Corporation that such transfer will not violate said Act or the rules and regulations promulgated thereunder. ’ ’
On January 14, 1963, the plaintiff forwarded the stock certificates and accompanying papers to Elliot S. Gross, the attorney for T.M.I., with instructions to convert those shares under Option No. 1 as provided by certain stipulated shareholder options. The plaintiff requested the shares to be transferred to him and to the names of two other persons.
On February 5, 1963, the executor bank sent a check in the amount of $325.05 to the Morgan Guaranty Trust Company, the transfer agent for T.M.I. This check represented the cost of the transfer taxes for the 31,253 shares.
On February 13, 1963, attorney Gross, mentioned above, forwarded to the Morgan Guaranty Trust Company the share certificates together with the accompanying documents for transfer on the books of the T.M.I. corporation, in accordance with the instructions received from the plaintiff.
The transfer bank communicated twice by telephone with T.M.I. respecting the restrictive legend appearing on the face of the stock certificates. Those dates were February 19, 1963, and February 28, 1963. Apparently the two inquiries provided no definite answers.
*84 T.M.I. was adjudicated bankrupt in April of 1963 and the authority of the transfer agent was terminated.
On June 27,1963, the stock certificates forwarded to the transfer agent were returned to the attorney for T.M.I. The documents which accompanied the certificate of shares were transmitted to Lincoln Bochester Trust Company by Morgan Guaranty Trust Company on June 27, 1963, together with a check in the sum of $325.05 for transfer tax. The Bochester Bank has retained these documents. The two stock certificates were eventually returned to the plaintiff who transferred them to the Bochester Bank and demanded the return of his money with interest. The bank has retained this stock.
The court is confronted with one issue in this case — whether title to the shares was transferred to the plaintiff despite noncompliance with the restrictive legend appearing on the share of certificates.
We can dispose of the liability of the defendant bank in its corporate capacity first. This cause of action is dismissed. The plaintiff knew on January 10,1963, that he was dealing with the bank in its representative capacity, having read the stock certificates presented to him and the documents transferred with the certificates. It was clearly evident that the certificates in question came from an estate and that the bank was acting as executor on behalf of the estate. No evidence was produced which would indicate fraud or a failure to disclose a relationship which would work any disadvantage to the plaintiff.
Subdivision (b) of section 162 of the Personal Property Law, in effect at the time of this transfer, provided the statutory method by which title to a certificate and the shares represented thereby may be transferred. It reads: ‘ ‘ By delivery of the certificate and a separate document containing a written assignment of the certificate or a power of attorney to sell, assign or transfer the same or the shares represented thereby, signed by the' person appearing by the certificate to be the owner of the shares represented thereby. Such assignment or power of attorney may be either in blank or to a specified person.”
The final paragraph of section 162 of the Personal Property Law states the following: “ The provisions of this section shall be applicable although the charter or articles of incorporation or code of regulations or by laws of the corporation issuing the certificate and the certificate itself provide that the shares represented thereby shall be transferable only on the books of the corporation or shall be registered by a registrar or transferred by a transfer agent.”
*85 Section 172 of the Personal Property Law supplies these warranties in the transfer of stock certificates:
“ (a) That the certificate is genuine,
“ (b) That he has a legal right to transfer it, and
“ (c) That he has no knowledge of any fact which would impair the validity of the certificate. ’ ’
The evidence shows that the defendant, Lincoln Rochester Trust Company, executor of the estate of William C. Chapin, hereinafter referred to as the executor, possessed the necessary documents and had the required authority as executor to effect a legal transfer of these shares of stock. The transfer to the plaintiff met the requirements of the afore-mentioned Personal Property Law. By this transfer the executor warranted that it had a legal right to transfer the stock and that it had no knowledge of any fact which would adversely affect the validity of this transfer. The plaintiff does not allege a breach of any of these warranties. The proof did not establish that counsel for T.M.I. rejected or would have rejected such a transfer for any violation of the Securities Act of 1933. In fact, the contrary appears when we find the counsel for T.M.I. forwarding the share certificates to the transfer agent pursuant to the plaintiff’s instructions.
The plaintiff himself on January 14,1963, forwarded the stock certificates to the attorney for T.M.I. Plaintiff was no stranger to these share certificates. Prior to the transfer in question here, it was established that the plaintiff had purchased other stock of this corporation at other times. Apparently he knew what steps should he taken to have these share certificates properly transferred into his name and the names of two' other people.
Despite the failure of counsel for T.M.I. to assure the transfer agent of the validity of this transfer before the corporation became bankrupt, the executor did nothing to delay, obstruct or impede what it considered a completed transaction.
The point of no return was reached. Control and dominion over the stock was vested in the plaintiff purchaser. The seller could not impair the negotiability of these shares by any act of its own. Once the executor surrendered the share certificates and other necessary documents duly executed, its control of those shares was at an end. It could not prevent their transfer on the books of the corporation, under the circumstances in this ease. Title had passed. The transfer agent was not the seller’s agent in this transaction. The plaintiff initiated the transfer by duly writing to counsel for the bankrupt corporation. The *86 latter then forwarded the documents to the transfer agent pursuant to plaintiff’s instructions. Any delay in failing to comply with the restrictive legend on these shares was not the fault of the executor. Having received the share certificates under the circumstances presented herein, the plaintiff had absolute dominion and control over them. The restrictive legend, standing alone, would not affect an otherwise completed transfer of title. (See last paragraph of section 162 of the Personal Property Law.) Further support for this proposition is found in Matter of Friedman (184 Misc. 639, mod. on other grounds, 269 App. Div. 834) and McNeil v. Tenth Nat. Bank (46 N. Y. 325, 331) wherein the court stated: “It has also been settled, by repeated adjudications, that, as between the parties, the delivery of the certificate, with assignment and power indorsed, passes the entire title, legal and equitable, in the shares, notwithstanding that, by the terms of the charter or by-laws of the corporation, the stock is declared to be transferable only on its books ; that such provisions are intended solely for the protection of the corporation, and can be waived or asserted at its pleasure, and that no effect is given to them except for the protection of the corporation; that they do not incapacitate the shareholder from parting with his interest, and that his assignment, not on the books, passes the entire legal title to the stock, subject only to such liens or claims as the corporation may have upon it, and excepting the right of voting at elections, etc. (Angell and Ames on Corporations, 8th ed., § 354; Bank of Utica v. Smalley, 2 Cow., 770; Gilbert v. Manchester Co., 11 Wend., 627; Kortright v. Com. Bank of Buffalo, 22 Wend., 362; N. 7. and N. H. R. R. Co. v. Schuyler, 34 N. Y. 80.) ”
The cause of action against the defendant, Lincoln Rochester Trust Company, executor of the estate of William C. Chapin, deceased, is dismissed.