249 N.J. Super. 305 (1991)
592 A.2d 321
MONROE BERGER, PLAINTIFF,
v.
DANIEL BERGER, FRANCES BERGER AND M & R MANUFACTURING CORP., A NEW JERSEY CORPORATION, DEFENDANTS.
Superior Court of New Jersey, Chancery Division Middlesex County, General Equity.
Decided March 25, 1991.
*307 Wayne Greenfeder for plaintiff (Stryker, Tams & Dill, attorneys).
Anthony P. LaRocco for defendant (Crummy, DelDeo, Dolan, Griffinger & Vecchione, attorneys).
BACHMAN, P.J. Ch.
This case, which came to the court by way of an application for an order to show cause with temporary restraints, involves the break-up of a family business. Plaintiff to this action is the son, Monroe (also known as Monte) Berger. Defendants are the parents, Daniel and Frances Berger, and the company, M & R Manufacturing. The family is in the toy distribution business. They manufacture, package, distribute and sell children's toys. The business is located at 1100 South Second Street in Plainfield, New Jersey. The parents live in Cranbury, New Jersey. The son lives in Edison, New Jersey.
The business appears to have been started in 1961 and was exclusively owned by Daniel Berger. Monroe Berger, at age 14, actively started taking part in the business sometime in the *308 mid 1970's. In 1985, a variety of stock transfer transactions were effected. This resulted in 98% of the stock in the business going to Monroe Berger, 1% to Frances Berger, and 1% to Daniel Berger. The stock owned by Monroe Berger and Frances Berger, however, was to be held by a voting trust controlled by Daniel Berger.
In 1987, Monroe Berger married his current wife. This resulted in problems with the relationship with his parents. The deterioration in that relationship has affected the family's operation of its business and resulted in this litigation.
Plaintiff alleges that his parents have decided to wind down what appears to be a prosperous ongoing concern. They do this despite the fact that plaintiff was actively involved in the business and wished to continue it. The parents, according to the allegations, have taken advantage of their control of the stock by excluding the son from the business and taking away his privileges as a corporate officer with the company's bank.
With the October 9, 1990 order to show cause, the court ordered the following:
(1) Monroe Berger was given access to books and records;
(2) Both parties were restrained from
 removing corporate books and records
 advising parties doing business with the company, that the company was closing down or materially changing its operation,
 interfering with the company's ability to obtain letters of credit, acquire inventory or perform other actions necessary to conduct the business in the ordinary course.
 disbursing company funds and transferring company property other than in the ordinary course of business, and
 repaying loans to company shareholders and officers.
The parties agreed to continue these restraints by consent order on October 29, 1990.
*309 This current motion is brought by defendants to have count four of the verified complaint dismissed,[1] pursuant to R.4:6-2(c), for failure to state a claim upon which relief can be granted, as it requests dissolution of the corporation under N.J.S.A. 14A:12-7(1)(c).[2]
Specifically, defendants contend that Monroe Berger cannot maintain this action to dissolve the corporation as he does not have standing since he is merely a beneficial owner of the subject stock; or, in the alternative, that plaintiff cannot maintain this cause of action since he is not a "minority shareholder" by virtue of his beneficial ownership of 98% of the corporate stock.

I.
The court must first address the question of plaintiff's standing to assert a dissolution action under N.J.S.A. 14A:12-7(1)(c) since he is not an actual shareholder. Defendants argue *310 that Monroe Berger is merely the beneficial owner of 98% of the corporation's stock, whose legal owner is the voting trust controlled by his father. In their argument in support of their motion to dismiss count four, defendants have brought to the court's attention a matter which originated in Delaware's Court of Chancery. In that case, Salt Dome Oil Corporation v. Schenck, 28 Del. Ch. 433, 41 A.2d 583, 158 A.L.R. 975 (Sup.Ct. 1945), the Supreme Court of Delaware addressed the question of whether or not the beneficial owners of stock held in "street name" could be considered stockholders under the merger provisions of that state's general corporation law. (Rev.Code 1935, Ch. 65, §§ 2091-2094, §§ 59-62, as amended by Ch. 131, Vol. 41, Del. Laws, approved April 13, 1937, and by Ch. 132, Vol. 43, Del. Laws, approved April 9, 1941.)[3] The Supreme Court of Delaware rejected the complainants' argument and reversed the lower court. It held that an unregistered holder of stock is not a "stockholder" under the statute: Only a registered holder of stock is allowed to intervene in a corporate merger under Delaware law. 28 Del. Ch. at 447, 41 A.2d at 589, 158 A.L.R. at 983.
Defendants, as further support for this argument to dismiss count four have endeavored to utilize an Appellate Division opinion which construed the Delaware Salt Dome case. Defendants cite Bache & Co. v. General Instrument Corp., 74 N.J. Super. 92, 180 A.2d 535 (App.Div. 1962), certif. den. 38 N.J. 181, 183 A.2d 87 (1962), as authority for the rule that, in New Jersey, only the legal owner, and not a beneficial owner of corporate shares, can be considered a "stockholder" or a *311 "shareholder." A close reading of Bache, however, shows that no such rule exists.
In Bache, plaintiff brokerage house held 33,400 shares of stock in the Pyramid Electric Company. Among these 33,400 shares were 2,690 shares that it held in "street name" for the benefit of a certain customer. In the spring of 1961, the Pyramid Electric Company was merged into the General Instrument Corporation. Bache voted against the merger on behalf of the beneficial owner of the subject 2,690 shares. Subsequently, and also on behalf of this beneficial owner,[4] Bache demanded an appraisal of these shares of stock. Id. at 94-96, 180 A.2d 535.
The Appellate Division specifically addressed the issue of whether the appraisal rights under New Jersey's then relevant corporation statutes could be invoked by a beneficial owner of stock, or whether it could only be invoked by an actual legal owner of stock. In its discussion of the former approach, the court cited such New York cases as In re Rowe, 107 Misc. 549, 176 N.Y.S. 753 (Sup.Ct. 1919) and Application of Friedman, 184 Misc. 639, 54 N.Y.S.2d 45 (Sup.Ct. 1945), mod. 269 App.Div. 834, 56 N.Y.S.2d 516 (App.Div. 1945) as authority. In its discussion of the approach favoring only the legal owner of stock, the Appellate Division cited Delaware's Salt Dome opinion. 74 N.J. Super. at 97-100, 180 A.2d 535. In addressing the two conflicting approaches, the Appellate Division appears to have framed the issue presented by Bache as:
We are not concerned here with the status of an equitable owner of stock who seeks to pursue an equitable remedy. Rather the question is whether there is anything in the statute [N.J.S.A. 14:12-7] which would inhibit plaintiff from bringing the appraisal action as registered owner of the 2,690 shares. [Id. at 98-99, 180 A.2d 535]
*312 The Bache court, in an opinion that went on to affirm the lower court's ruling that plaintiff was entitled to an appraisal of the 2,690 shares of stock under N.J.S.A. 14:12-7,[5] seems to have only tangentially addressed this question by focusing upon the fact that it was Bache, the record owner of the stock (and not the beneficial owner of the stock), that made the demand for the appraisal. In addition, the Appellate Division seems to also have taken the approach that, as Bache had immediately informed defendant of the identity of the beneficial owner, defendant had in no way been harmed by the effective identity of the party prosecuting this action. Specifically, the court wrote that:
[w]hen we inquired at oral argument how the merger corporation could in any way be affected by permitting plaintiff, as registered owner, to bring the present action, counsel for defendant frankly admitted that there was no answer  it made no real difference to the corporation whether plaintiff or the beneficial owner brought the appraisal proceeding. [Id. at 97, 180 A.2d 535]
Also worthy of note, is the fact that a subsequent Delaware Supreme Court opinion and a subsequent Superior Court, Law Division opinion both construed the Appellate Division's opinion in Bache to stand for the proposition that beneficial owners of stock held in "street name" could assert statutory rights. In Reynolds Metals Co. v. Colonial Realty Corp., 190 A.2d 752 (Del.Sup.Ct. 1963), the Supreme Court of Delaware held that a stockbroker holding shares in its name as nominee for various customers, by voting some shares in favor of a merger, was not precluded from seeking an appraisal as to other shares held in "street name." In reaching this decision, the Delaware court wrote:

*313 [A] comment must be made upon a recent decision in our sister state of New Jersey. In Bache & Co. v. General Instrument Corporation, 74 N.J. Super. 92, 180 A.2d 535, certif. denied 38 N.J. 181, 183 A.2d 87, the Superior Court of New Jersey construed language in the New Jersey merger statute similar to ours. The court held that a brokerage firm which held blocks of stock in street name for various beneficial owners was not precluded, by having voted some shares in favor of the merger, from demanding appraisal in respect of other shares. As the Vice Chancellor said below, all of the reasoning of the New Jersey court is not applicable to our statutory scheme. But with the underlying thought in the opinion we are in agreement. This is the recognition of the realities of modern stock practices and the necessity to afford such protection to stock beneficially owned as is not inconsistent with protection of the corporation's rights. [Id., 190 A.2d at 756; emphasis supplied]
In Bohrer v. U.S. Lines, 92 N.J. Super. 592, 224 A.2d 348 (Law Div. 1966), a case involving the appointment of an appraiser for shareholders that opposed a merger, the Law Division held that the maintenance of such an action was not limited to the registered owner of stock. Specifically, the court wrote that:
To deprive the beneficial owners of the appraisal statute under these circumstances would violate the spirit of the law and work a forfeiture merely on a hyper-technical basis. To do justice to the beneficial owners where no injury, prejudice or damage will result to the detriment of defendant, the right of the beneficial owners to bring this action must be sustained, and this court so upholds that right. It is in keeping with the policy that our appraisal statute be construed liberally in favor of dissenting stockholders that this court recognizes plaintiffs' right to bring this action. [Id. at 597, 224 A.2d 348; citations omitted]
In confronting argument that Bache was authority on this issue, the Bohrer court wrote:
This court finds no precedent in New Jersey which treats the precise question of the right of the nonregistered beneficial owners of stock to seek appraisal. Counsel for defendant urges that the case of Bache & Co. v. General Instrument Corp., 74 N.J. Super. 92 [180 A.2d 535] (App.Div. 1962), certif. denied 38 N.J. 182 [183 A.2d 87] (1962), is dispositive of this particular issue. The reading of Bache, however, reveals that the Appellate Division was only called upon to consider the converse situation of that presented to this court, namely, whether the record owner might invoke the appaisal procedure.... [Id. at 595, 224 A.2d 348]
Thus, both the case law of the State of Delaware and the State of New Jersey have found that there is no New Jersey precedent for the rule that only a legal owner of stock has *314 standing to bring an appraisal action in the capacity of a shareholder that had opposed a corporate merger.[6] Finally, a review of the commissioners' comments to the 1968 enactment of the current New Jersey appraisal statute, N.J.S.A. 14A:11-1(3),[7] which does provide for the assertion of a dissenting shareholder's appraisal rights, bears mention. The statute subsection provides for the legal owner of stock to assert appraisal rights on behalf of the beneficial owner. The commissioners' comments on this subsection specifically state the following:
The first sentence of subsection 14A:11-1(3) departs from the Model Act by not permitting a shareholder or his nominee or fiduciary to dissent as to less than all the shares with respect to which a right of dissent exists. Where, however, a nominee or fiduciary holds shares for more than one beneficiary, the second sentence of subsection 14A:11-1(3) permits the nominee or fiduciary to dissent as to the shares held for one or more beneficiaries without being required to dissent as to shares held for all beneficiaries. This is in accord with present New Jersey law. See Bache & Co. v. General Instrument Corp., 74 N.J. Super. 92, 180 A.2d 535 (App.Div. 1962), certif. denied, 38 N.J. 181 [183 A.2d 87] (1962). Subsection 14A:11-1(3) is derived from section 623(d) of the New York Act. Subsection 14A:11-1(3) does not preclude a beneficial shareholder from dissenting in his own name. Compare Bohrer v. United State Lines Co., 92 N.J. Super. 592, 224 A.2d 348 (Law Div. 1966). [N.J.S.A. 14A:11-1, Commissioners' Comment  1968; emphasis supplied]
Therefore, defendants' attempt to fashion an argument based upon the Supreme Court of Delaware's decision in Salt Dome Oil Corporation v. Schenck, that count four of the verified complaint should be dismissed as Monroe Berger has no standing to bring such a dissolution action since he is merely a beneficial owner of the subject stock, must be rejected. This *315 court finds that plaintiff does have standing to maintain the action.

II.
The remaining issue presented by this motion is whether a nominal owner of 98% of the stock  in this case, Monroe Berger, whose stock is in the hands of a trust controlled by defendant, his father Daniel Berger  in a closely held corporation, can be deemed to be a minority shareholder. This issue can be reduced to two questions:
(1) Should minority shareholder status be determined through a mechanistic count of stock ownership percentages, or should it be determined by a qualitative evaluation of the actual control a particular shareholder may exert on a closely held corporation?
(2) Would a qualitatively based definition of minority shareholder status be consistent with the relevant statute dealing with closely held corporations?
N.J.S.A. 14A:12-7, which became effective in 1974, was designed to deal with the internal problems of closely-held (25 shareholders or less) corporations. N.J.S.A. 14A:12-7, Commissioners' Comment  1972 Amendments; Kessler, "The Revised New Jersey Business Corporation Act of 1988 as amended and its effect on close corporations," 20 Seton Hall 130, 141, 176-178 (1989). Like the language in the relevant portion of the statute, the commissioners' comment shows the focus of the statute to be that of remedying abuse and oppression by those in control of a closely held corporation (directors, majority shareholders, and management) against minority shareholders. In fact, the commissioners' comment, in discussing similar statutes in other jurisdictions, stated the following:
These additional words reflect the fact that in a closely-held corporation oppressive conduct often takes the form of freezing-out a minority shareholder by removing him from his various offices or by substantially diminishing his power or compensation; in the absence of such language, the courts might feel constrained to look exclusively to direct injury to the shareholder's stock interest. The Commission agreed that in the context of a closely-held corporation our courts should be free to look beyond direct harm to the value of a shareholder's investment and to consider all pertinent factors. [N.J.S.A. 14A:12-7, Commissioners' Comment  1972 Amendments; citations omitted]
*316 Thus, it can clearly be argued that the intent and purpose of N.J.S.A. 14A:12-7 is to prevent abuse and oppression by those in control of a closely-held corporation upon those with inferior interests. Thus, regarding Monroe Berger's position, it can be further argued that, as the focal point of the statute is to prevent abusive and oppressive acts in closely-held corporations, the term "minority shareholder" must be leniently construed. In fact, the commissioners' comments clearly indicate that the courts were to have this flexibility in that they "should be free to look beyond direct harm."
Finally, the very fact that the Legislature passed this statute for the purpose of providing relief to "minority shareholders" in a closely held corporate situation would seem to indicate that the courts were provided with flexibility as to the interpretation of such minority ownership interests. Such flexibility would seem to be inherent in such a statute as creativity in ownership arrangements in closely-held corporations is a somewhat common occurrence. (In fact, this position is further supported by the 1988 amendments to this statutory scheme, which regulates closely held corporations. Specifically, N.J.S.A. 14A:5-19, -20 and -21 provide for the irrevocability and enforceability of stock proxies, voting trusts and pooling arrangements. Clearly, a regulatory scheme which provides for the stringent enforcement of such stock voting arrangements must allow for a lenient construction of the term "minority shareholder.")
There has been very little case law devoted to construing this 1972 statute. Cases which have construed this statute are:
(1) 68th St. Apts. Inc. v. Lauricella, 142 N.J. Super. 546, 362 A.2d 78 (Law Div. 1976)  a case involving the deadlock of two 50% shareholders over a construction corporation forced to liquidate when the project was abandoned;
(2) Exadaktilos v. Cinnaminson Realty Co., Inc., 167 N.J. Super. 141, 400 A.2d 554 (Law Div. 1979), aff'd 173 N.J. Super. 559, 414 A.2d 994 (App.Div. 1979), certif. denied 85 N.J. 112, 425 A.2d 273 (1979)  a case involving a 20% shareholder and the question of whether a resulting trust was formed by the gift of the funds to purchase the stock;
(3) Small v. Goldman, 637 F. Supp. 1030 (D.N.J. 1986)  a case in which Judge Ackerman rejected an argument by plaintiff that standing to bring a civil *317 RICO action existed pursuant to N.J.S.A. 14A:12-7. The plaintiff's percentage of ownership was not discussed in the opinion. (Note: Judge Ackerman found standing to bring the RICO action on other grounds.)
Clearly, none of the cases which have construed N.J.S.A. 14A:12-7 to date have had to deal with the issue of what is a minority shareholder. Some guidance as to what is a "minority shareholder" can be found in 88 C.J.S. Corporations, § 328. This section seems to state that a "majority shareholder" is one who has control of the voting stock in the corporation. Thus, arguably, this approach can be used to deem any shareholder, regardless of his percentage of ownership interest, to be a "minority shareholder" if such an interest does not have control of the corporate shares with respect to voting rights.
Finally, in Massey v. Farnsworth, 353 S.W.2d 262 (Tex.Civ. App. 1961), the Court of Civil Appeals of Texas, in a case involving allegations of fraud among certain shareholders in a closely-held corporation regarding the transfer of ownership to a successor corporation, ruled that "dissenting shareholder" and "minority shareholder" are synonymous terms. Id. at 267. In what this court finds to be a question of first impression, defendant's motion to dismiss the fourth count of plaintiff's complaint is denied. Specifically, the motion is denied because the intent of N.J.S.A. 14A:12-7(1)(c) was to remedy situations such as the one currently before the court, and because "dissenting shareholder" is a reasonable interpretation of the term "minority shareholder" under the closely-held corporation statute.
NOTES
[1] The other counts of the complaint are as follows: (A) count one  breach of fiduciary duty by the corporation's directors and officers; (B) count two  to set aside the trust agreement and dissolve the voting trust as Daniel and Frances Berger are not longer interested or capable of managing the company and, therefore, the company's survival is dependent upon this action being taken; (C) count three  removal of Daniel Berger as trustee of the voting trust under N.J.S.A. 3B:14-21 ("Removal for cause [of fiduciaries]"); and (D) count five  what appears to be a common law shareholder's derivative suit action based on the grounds that the company cannot prosecute an action against Daniel and Frances Berger due to Daniel and Frances Berger's control over the corporation.
[2] This statute provides as follows: (1) The Superior Court, in an action brought under this section, may appoint a custodian, appoint a provisional director, order a sale of the corporation's stock as provided below, or enter a judgment dissolving the corporation, upon proof that

........
(c) In the case of a corporation having 25 or less shareholders, the directors or those in control have acted fraudulently or illegally, mismanaged the corporation, or abused their authority as officers or directors or have acted oppressively or unfairly toward one or more minority shareholders in their capacities as shareholders, directors, officers, or employees.
[3] It appears as if the current incarnation of Delaware's merger statute can be found at Del. Code Ann. tit. 8, § 262 (1990). Of relevance in the current statute is the language which states "[a]s used in this section, the word `stockholder' means a holder of record of stock in a stock corporation and also a member of record of a nonstock corporation; the words `stock' and `share' mean and include what is ordinarily meant by those words and also membership or membership interest of a member of a nonstock corporation."
[4] The beneficial owner of the 2,690 shares that were the subject of Bache was the Colonial Realty Corporation. It appears as if this entity was also the beneficial owner of the stock that was the subject of Reynolds Metal Co. v. Colonial Realty Corp., 41 Del. Ch. 183, 190 A.2d 752 (Del.Sup.Ct. 1963), discussed infra.
[5] The New Jersey appraisal statute, N.J.S.A. 14:12-7, was superceded by N.J.S.A. 14A:11-1 et seq. Of particular relevance is the current N.J.S.A. 14A:11-1(3). This subsection states that:

[a] shareholder may not dissent as to less than all of the shares owned beneficially by him and with respect to which a right of dissent exists. A nominee or fiduciary may not dissent on behalf of any beneficial owner as to less than all of the shares of such owner with respect to which the right of dissent exists.
[6] A possible reason for the confusion regarding the proper interpretation of Bache & Co. v. General Instrument Corp., 74 N.J. Super. 92, 180 A.2d 535 (App.Div. 1962), certif. den. 38 N.J. 181, 183 A.2d 87 (1962) is the fact that commentators have suggested, most likely because the case discusses Salt Dome Oil Corporation v. Schenk, 28 Del. Ch. 433, 41 A.2d 583, 158 A.L.R. 975 (Sup.Ct. 1945), that the Appellate Division adopted its holding. An analysis of the actual decision in Bache shows this to be an error.
[7] See n. 5 supra.